**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CHARLES ROLLIN MORRIS, | ) CASE NO. 3:24-CV-02118-JRK |
| | ) |
| Plaintiff, | ) DISTRICT JUDGE |
| | ) JUDGE JAMES R. KNEPP, II |
| v. | ) |
| | ) MAGISTRATE JUDGE |
| WARDEN TOM WATSON, | ) CARMEN E. HENDERSON |
| | ) |
| | ) **REPORT AND RECCOMMENDATION** |
| Defendant, | ) |

## I.  Introduction

Petitioner, Charles Rollin Morris, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Morris is an Ohio prisoner who is currently serving an aggregate sentence of a minimum mandatory term of 19 years and 41 months nonmandatory up to a maximum of 23.5 years mandatory and 41 months nonmandatory. Morris asserts four grounds for relief. (ECF No. 1). Respondent, State of Ohio filed a return of writ on May 6, 2025. (ECF No. 7). Morris filed a traverse on July 25, 2025. (ECF No. 9). On July 29, 2025, Respondent filed an objection to the Traverse. (ECF No. 10).

This matter was referred to me under Local Rule 72.2 to prepare a report and recommendation on Morris's petition and other case-dispositive motions. Because Morris has presented only procedurally defaulted claims, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

## II. Relevant Factual Background

The Ohio Court of Appeals for the Third Appellate District set forth the following facts on direct appeal:

{¶2} Morris was staying in a room at the B&J Motel in Kenton, Ohio. Madison Adams ("Adams") testified that she was acquainted with Morris and had purchased drugs from him on several occasions. She further testified that, on at least two occasions, she saw him sell drugs to other people in his room at the B&J Motel. During these transactions, she saw him use a scale in his room to weigh the methamphetamines that he was selling. Adams testified that she was seeking help in the midst of her drug addiction and encountered a woman named Rochelle Miller ("Miller"). Miller allowed Adams to stay with her for a couple days in August of 2022.

{¶3} Shortly after Adams had come to stay with her, Miller testified that she was awakened in the middle of the night to the sound of someone kicking in her front door. She explained that she lived in an apartment on the second story of a house and that a stairway went from the front door on the ground floor directly up to her living area. After she woke up, she went with her dog to the top of the stairway where she saw Morris standing at the bottom of the stairs. Miller stated that Morris pointed a handgun directly at her and said, "Where's that b***h at?" (Tr. 307). Since Adams had been staying with her, Miller believed that Morris was referring to Adams with this comment. However, Adams was not at Miller's house at that time.

{¶4} Miller testified that her dog raced down the stairway and chased Morris away from her residence. She then examined the entryway to her house, discovering that the front door was cracked and that the door frame was broken. She testified that she initially did not report this incident to law enforcement because she was afraid of Morris. However, Miller eventually decided that reporting Morris was the right thing to do after speaking with Adams. Miller believed that a friend of Adams's named Daisy had told Morris that Adams had been staying at Miller's residence.

{¶5} On August 25, 2022, Officer Melvin Yoder ("Officer Yoder") of the Kenton Police Department met with Miller and Adams. Based upon what Adams told him, Officer Yoder sought a search warrant for Morris's room at the B&J Motel. During the subsequent search, the police located a pill bottle with sixty-one yellow pills and two pink pills. They also found a glass pipe and two digital scales that were dusted with a powdery residue. Officer Yoder affirmed that he also discovered a "substance" in a "red plastic cup" inside one of the drawers of Morris's nightstand. (Tr. 411-412). While the police discovered a holster and some gun oil, they did not locate any firearms. After Morris was arrested, the police searched his person and located three Xanax bars on him.

{¶6} Based on the imprinted markings on the pills that were discovered in Morris's room, the police determined that the sixty-one yellow pills were cyclobenzaprine

2

hydrochloride and the two pink pills were Alprazolam. The powdery residue from the scales was sent to the Ohio Bureau of Criminal Investigation ("BCI") for testing. BCI determined that this powdery residue was composed of methamphetamines. The substance in the red cup was also tested and found to be 2.55 grams of methamphetamines.

*State v. Morris*, 2023-Ohio-4021, ¶¶ 2-6, *motion for delayed appeal granted,* 2024-Ohio-984, ¶¶ 2-6, 173 Ohio St. 3d 1431, 229 N.E.3d 1205, and *cause dismissed,* 2024-Ohio-1545, ¶¶ 2-6, 173 Ohio St. 3d 1465, 232 N.E.3d 803, and *appeal not allowed,* 2024-Ohio-2576, ¶¶ 2-6, 174 Ohio St. 3d 1537, 237 N.E.3d 230.

Morris disagrees with some of the facts included in the appellate court decision: 1) he claims that Ms. Adams never stated that she purchased drugs off of him; 2) that Ms. Adams did not testify that she saw him sell drugs to other people, but rather, she saw him sell drugs to the same person on two different occasions; and 3-4) that Ms. Adams had not been staying with Ms. Miller at the time of the burglary. (ECF No. 9 at 1-4). The facts found by the appellate court "shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

### III. Relevant State Procedural History

#### A. Indictment

Morris was indicted on September 14, 2022, on nine charges, including:

one count of aggravated possession of drugs in violation of R.C. 2925.11(A), a fifth-degree felony; one count of having weapons while under disability in violation of R.C. 2925.02(A)(3), a third-degree felony; one count of possession of drugs in violation of R.C. 2925.11(A), a fifth-degree felony; one count of selling, purchasing, distributing, or delivering dangerous drugs in violation of R.C. 4729.51(E)(1)(c), a fifth-degree felony; one count of possessing drug abuse instruments in violation of R.C. 2925.12(A), a first-degree misdemeanor; one count of aggravated possession of drugs in violation of R.C. 2925.11(A), a second-degree felony; one count of aggravated trafficking in drugs in violation of R.C.

3

2925.03(A)(2), a second-degree felony; one count of aggravated burglary in violation of R.C. 2911.11(A)(2), a first-degree felony; and one count of aggravated menacing in violation of R.C. 2903.21(A), a first-degree misdemeanor.

*Id.*, 2023-Ohio-4021, ¶ 7.

### B. Trial and Guilty Verdict

A jury trial was held on December 14 and 15, 2022. The jury returned verdicts of guilty on all nine charges against Morris. The trial court determined that several of these offenses merged at sentencing, leaving Morris with seven convictions. The trial court issued its judgment entry of sentencing on December 29, 2022.

*Id*. 2023-Ohio-4021, ¶ 8. Morris was sentenced to serve an aggregate sentence of a minimum mandatory term of 19 years and 41 months nonmandatory up to a maximum of 23.5 years mandatory and 41 months nonmandatory. (ECF No. 7-1, Ex. 6).

### C. Direct Appeal

On appeal, Morris raised five assignments of error:

1. Appellant's sentence/conviction was not supported by sufficient evidence.

2. The trial court erred in taxing court-appointed attorney fees as costs.

3. Appellant's conviction was against the manifest weight of the evidence.

4. The trial court erred in sentencing Appellant to allied offenses of similar import.

5. The trial court erred in ordering Appellant to pay the mandatory fine.

(ECF No. 7-1, Ex. 8 at PageID #: 246). The State of Ohio filed an Appellee's brief (*Id.*, Ex. 9), and on November 6, 2023, the state appellate court affirmed the trial court's judgment on the first, third, fourth, and fifth assignments of error and reversed the judgment of the trial court on the second assignment of error (*Id.*, Ex. 10); *Morris*, 2023-Ohio-4021, ¶ 71. The appellate court

remanded the matter to the trial court to vacate that part of the sentence that imposed court-appointed counsel fees.

On November 8, 2023, the trial court vacated the order to pay court-appointed counsel fees from the sentencing order. (*Id.*, Ex. 11).

### 1. Appeal to the Ohio Supreme Court

On January 16, 2024, Morris, pro se, filed a notice of appeal of the November 6, 2023, decision by the Ohio Court of Appeals and a motion for leave to file a delayed appeal to the Ohio Supreme Court in Case No. 24-0083. (*Id.*, Ex. 12, 13). On March 19, 2024, the Ohio Supreme Court granted the delayed appeal and granted Morris 30 days to file a memorandum in support of jurisdiction. (*Id.*, Ex. 14). On April 24, 2024, the Ohio Supreme Court dismissed the case for failure to prosecute because Morris did not file a memorandum in support of jurisdiction. (*Id.*, Ex. 15).

### 2. Ohio App. R. 26(B) Application to Reopen

On February 7, 2024, Morris, pro se, filed an application to reopen his appeal pursuant to App. R. 26(B). (Exhibit 16, Application to Reopen). Morris claimed he received ineffective assistance of appellate counsel when counsel failed to raise the following four assignments of error:

1. Appellant's conviction for Aggravated Possession are (sic) not support by sufficient evidence to establish the elements of those charges are required by the Sixth and Fourteenth Amendments to the United Sates Constitution, and Article one, Section 10 of the Ohio Constitution.

2. Appellant's conviction for Selling, Purchasing, Distributing, or Delivering Dangerous Drugs are (sic) not supported by sufficient evidence to establish the elements of those charges as required by the sixth and fourteenth Amendments to the United States Constitution, and Article one, Section 10 of the Ohio Constitution.

5

3. Appellant's conviction for Aggravated Burglary are (sic) not supported by sufficient evidence to establish the elements of those charges are required by the sixth and Fourteenth Amendments to the United Sates Constitution, and Article one, Section 10 of the Ohio Constitution.

4. Appellant's conviction for Having a Weapon While Under Disability are (sic) not supported by sufficient evidence to establish the elements of those charges as required by the Sixth and Fourteenth Amendments to the United Sates Constitution, and Article one, Section 10 of the Ohio Constitution.

*Id.* On March 20, 2024, the Ohio Court of Appeals denied Morris' application to reopen the appeal. (Exhibit 17, Journal Entry 3-20-2024). The Ohio Court of Appeals found that appellate counsel challenged the sufficiency and weight of the evidence on appeal, the assignments of error were addressed by the Court [on direct appeal] and were found to be meritless. *Id.* page 2. On April 22, 2024, Morris, pro se, filed an appeal of the Third District Court of Appeals' Judgment to the Ohio Supreme Court. (Exhibit 18, Notice of Appeal 24-0552).

In Morris' memorandum in support of jurisdiction, filed on April 22, 2024, Morris asserted the following propositions of law:

1. APPEALANT'S (sic) SENTENCE/CONVICTION WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE FOR THE REASON THE TRIAL COURT ABUSED ITS DISCRETION

2. APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

3. The trial court erred in sentencing Appellant to consecutive sentencing:

4. The trial court erred in ordering Appellant to pay the mandatory fine.

5. Ineffective Appellate Counsel—Failure to address new evidence that was presented in court records.

(Exhibit 19, Memorandum in Support of Jurisdiction). After a review of the memorandum, the Supreme Court of Ohio held that the memorandum exceeded fifteen numbered pages, and sua sponte ordered that pages 17-33 of the memorandum were to be stricken. (Exhibit 20, Entry 4-24-

24). On July 9, 2024, the Ohio Supreme Court declined to accept jurisdiction. (Exhibit 21, Decision 79-24).

## IV. Federal Habeas Corpus Petition

On December 6, 2024, Morris petitioned pro se that this Court issue a writ of habeas corpus. (ECF No. 1). Morris asserted the following grounds for relief:

> **Ground One:** A violation of the Due Process Clause of the Fourteenth Amendment, violation of 18 U.S.C. § 1621(1) or (2) or BOTH
>
> Supporting Facts: The charge of Aggravated Burglary involves (3) three testifying witnesses. When one is Officer Yoder who the alleged crime was reported to by a Ms. Rochelle Miller and Ms. Madison Adams when Ms. Miller is the individual that lived at the address and Ms. Miller reported and testified to Ms. Adams being the individual the petitioner was looking for to making him commit this act. When the petitioner will present perjury from the reporting stage of this allegation and all the way through to the end of this allegation.
>
> \*
>
> **Ground Two:** The State violated petitioner's Fourteenth Amendment Due Process Rights by entering a conviction on insufficient evidence according O.R.C. Ann. 2925.51(A)&(B).
>
> Supporting Facts: This charge involves (2) pictures that was extracted off of the petitioner's phone that the court said they were pictures of methamphetamine and without no chemical analysis from any private lab or from B.C.I. convicted the petitioner of a second degree felony and sentenced the petitioner to (7) seven years with a mandatory ($7,500.00) seventy-five hundred fine.
>
> \*
>
> **Ground Three:** State violate petitioner Fourteenth Amendment Dure Process Rights by suborning perjury. (sic)
>
> Supporting Facts: The charge is from (61) sixty-one cyclobenzaprine hydrochloride 5 mg tablets that were found in the petitioner's motel room in an unmarked pill bottle. Ms. Ashley Knippen testified to the petitioner not having a prescription for this medication from August 26th, 2017 through August 26th, 2022. When the petitioner will produce from a pharmacy that this testimony of Ms. Knippen was false testimony.

\*

> **Ground Four:** The State violated petitioner's Fourteenth Amendment Due Process Rights by entering a conviction on insufficient evidence according O.R.C. Ann. 2923.11(A)&(B).
>
> Supporting Facts: This charge of Having a weapon while under disability has no testimony towards the capabilities of the alleged firearm operational abilities. Upon the conflicting testimonies and the testimony not even confirming the handgun the petitioner does not only believe the State did not prove their case towards saying the firearm operational capabilities but the State did not even prove their case on the fact there was a firearm at all seeing the Aggravated Burglary charge were based on perjured testimony from beginning to the end and in between.

(ECF No. 1 at PageID #: 7, 9, 11, 13).

### V.     Legal Standards

#### A.     Timeliness of Petition

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year period of limitations for state prisoners to file their federal habeas corpus petitions. *Wall v. Kholi*, 562 U.S. 545, 550 (2011) (citing 28 U.S.C. § 2244(d)(1)); *Sexton v. Wainwright*, 968 F.3d 607, 609-10 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 1064 (2021). There is no argument that Morris's federal habeas corpus petition was untimely. (*See* ECF No. 7).

#### B.     Jurisdiction

Title 28 U.S.C. § 2254(a) authorizes district courts to entertain an application for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him." 28 U.S.C. § 2241(d). The Court of Common Pleas of Hardin County sentenced Morris, and Hardin County is within this court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Morris's § 2254 petition.

### C. Exhaustion

"A federal habeas corpus court should not grant a habeas corpus application by a state prisoner unless he has exhausted all of his available state court remedies on his grounds for relief. 28 U.S.C. § 2254(b) and (c)." *Gordon v. Bradshaw*, No. 104 CV 2299, 2007 WL 496367, at *12 (N.D. Ohio Feb. 12, 2007). "A petitioner satisfies the exhaustion requirement once the state supreme court provides him with an opportunity to review his claims on the merits and the state supreme court has had a full and fair opportunity to rule on the claims." *Id.* (citing *Dickerson v. Mitchell*, 336 F.Supp.2d 770, 786 (N.D. Ohio 2004) (citing *O'Sullivan*, 526 U.S. 838; *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir.1994); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990))). "If a remedy remains under state law that a federal habeas corpus petitioner has not yet pursued, exhaustion has not occurred and the federal habeas court cannot review the merits of the claim." *Id*. (citing *Rust*, 17 F.3d at 160). "When a petitioner has failed to exhaust his state remedies, and when he can no longer do so under state law, his habeas claim is procedurally defaulted." *Adams v. Burton*, No. 16–1476, 2016 WL 6610219, at *2 (6th Cir. Nov. 8, 2016) (citing *O'Sullivan*, 526 U.S. at 848).

### D. Procedural Default

Procedural default occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84–87 (1977); *Engle*, 456 U.S. at 125 n. 28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court again looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805

9

(1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000).  When a state court declines to address a prisoner's federal claims because the prisoner failed to meet a state procedural requirement, federal habeas review is barred as long as the state judgment rested on "independent and adequate" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). To be independent, a state procedural rule and the state courts' application of it must not rely in any part on federal law. *Id*. at 732–33. To be adequate, a state procedural rule must be "'firmly established' and 'regularly followed'" by the state courts at the time it was applied. *Beard v. Kindler*, 558 U.S. 53, 60–61 (2009).

A petitioner procedurally defaults a claim by failing to "fairly present" the claim in state court when he does not pursue that claim through the state's "'ordinary appellate review procedures,'" and, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim. *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). Under these circumstances, while the exhaustion requirement is technically satisfied because there are no longer any state-court remedies available to the petitioner, the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims, barring federal habeas review. *Williams*, 460 F.3d at 806 ("Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review."); *see also Gray v. Netherland*, 518 U.S. 152, 161–62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . ., it is

10

satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ." (internal citations omitted)).

Furthermore, to "fairly present" a claim to a state court, a petitioner must assert both its legal and factual basis. *Williams*, 460 F.3d at 806 (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Most importantly, a "'petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.'" *Id*. (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)). A petitioner can overcome a procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered. *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id*. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id*. "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)); *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004) ("The 'fundamental miscarriage of justice' gateway is open to a petitioner who submits new evidence showing that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.' " (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995))).

VI. **Discussion**

    A. **Procedural Default**

In his Petition, Morris specifically states that each of his habeas grounds for relief was raised in his direct appeal to the State appellate court. (ECF No. 1 at PageID #: 8, 10, 11, 13).

11

Respondent argues that Morris's entire petition is procedurally defaulted because Morris failed to pursue his direct appeal with the Ohio Supreme Court. Morris was granted leave to file a delayed appeal to the Ohio Supreme Court. However, Morris failed to pursue his appeal and upon finding that Morris had "failed to prosecute this cause with the requisite diligence" the Ohio Supreme Court dismissed his appeal "in compliance with the Rules of Practice of the Supreme Court of Ohio." *State v. Morris*, 2024-Ohio-1545, 173 Ohio St. 3d 1465, 232 N.E.3d 803.

Because Morris failed to pursue his appeal to the Ohio Supreme Court, Morris has procedurally defaulted his claims. *Robinson v. Collins*, No. 20–3071, 2020 WL 3987990, at *1 (6th Cir. May 26, 2020) (finding that claimant had procedurally defaulted his habeas claims for failing to file a timely appeal to the Ohio Supreme Court). Habeas corpus review of procedurally defaulted claims "is barred unless the prisoner can demonstrate cause for the default and actual prejudice ... or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To establish cause, a habeas corpus petitioner ordinarily must "show that some objective factor external to the defense" prevented the petitioner's compliance with a state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A petitioner may also invoke a miscarriage of justice as when a petitioner provides new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent. *Hodges v. Colson*, 727 F.3d at 530. Morris argues that his procedural default should be excused because 1) his grounds assert structural error; and 2) it would be a miscarriage of justice to allow the conviction to stand. Morris stresses that these two exceptions "apply to every ground raised in this Petition and should excuse any procedural default" that the Respondent claims.

### B. Cause & Prejudice

"To establish cause a petitioner must present a substantial reason to excuse his procedural default." *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994). This substantial reason requires the petitioner to show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citing as examples a showing that the factual or legal basis for a claim was not reasonably available to counsel or that some interference by officials made compliance impracticable). Morris does not identify any cause for his procedural default; instead, Morris asserts that any default should be excused because the errors are "structural" and that it would be a "miscarriage of justice" to allow the conviction to stand. However, even if Morris raises "structural errors", he must still demonstrate cause and prejudice for defaulting on such errors. But Morris does not raise ineffective assistance of counsel, lack of counsel, or state impediments as cause. Morris merely states that the proceedings were fundamentally deficient, particularly that a conviction without physical evidence, laboratory confirmation, or appropriate procedural safeguards amounts to a structural error that creates a substantial risk of wrongful conviction. Accordingly, Morris has not sufficiently demonstrated "cause" for his failure to pursue his direct appeal with the Supreme Court of Ohio.

As Morris is unable to establish cause to excuse his procedural default, the Court declines to address the issue of prejudice. *See Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000) ("When a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice."); *Group v. Robinson*, 158 F. Supp. 3d 632, 651 (N.D. Ohio Jan. 20, 2016).

### C. Miscarriage of Justice

Morris also asserts that this Court should review his claims under the "fundamental miscarriage of justice" exception to procedural default. A "fundamental miscarriage of justice"

13

can occur only when the procedurally defaulted claim would establish that the petitioner was "actually innocent." *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006); *Dufresne v. Palmer*, 876 F.3d 248, 255–56 (6th Cir. 2017). But "[A]ctual[ ] innocen[ce]" means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To overcome procedural default, an actual innocence claim must be supported by "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324.

1. **Ground One**

Morris asserts that his conviction for aggravated burglary violates the due process clause of the Fourth Amendment because he alleges that the State presented perjured testimony. (ECF No. 1, PageID #: 7). Morris contends that prosecution witness, Rochelle Miller, gave false conflicting versions of her testimony. (ECF No. 9, PageID #: 1241–45)*.* Moreover, Morris argues that inconsistencies between Officer Yoder's Incident Report, Ms. Miller's written statement, and Ms. Miller's trial testimony, concerning the date of the burglary, August 21, 2022, August 23, 2022, and August 16, 2022, respectively, establish that the prosecution relied upon false testimony in obtaining their conviction. *Id.* Additionally, Morris presents evidence that Ms. Miller misrepresented her criminal history in her trial testimony. *Id.* at PageID #: 1249.

However, Petitioner has failed to offer this Court *new reliable evidence* of innocence that was not presented at trial which would excuse his default. *See Schlup,* 513 U.S. at 324 (emphasis added). Although Petitioner has presented evidence that he claims could impeach the witness' credibility, a habeas petitioner's renewed attacks on a witness' credibility are insufficient to establish actual innocence for the purposes of excusing a procedural bar. *See In Re Byrd*, 269 F.3d 561, 577 (6th Cir. 2001) (holding that petitioner's "renewed attacks on [a] trial witness ['s]

... credibility ... do not provide proof of 'actual innocence'") (citing *Clark v. Lewis*, 1 F.3d 814, 824 (9th Cir.1993) (allegation that prosecution witness could have been impeached by allegedly withheld evidence did not constitute a credible claim of "actual innocence" sufficient to show that the petitioner was actually innocent)); *see also Calderon v. Thompson*, 523 U.S. 538, 563, 118 S. Ct. 1489, 140 L.Ed.2d 728 (1998) (newly discovered impeachment evidence, which is "a step removed from evidence pertaining to the crime itself," "provides no basis for finding" actual innocence); *Sawyer v. Whitley*, 505 U.S. 333, 349, 112 S. Ct. 2514, 120 L.Ed.2d 269 (1992) (newly discovered impeachment evidence "will seldom, if ever," establish actual innocence). Evidence that merely impeaches a witness is thus insufficient to support a claim of actual innocence. *See Sherratt v. Friel*, 275 F. App'x 763, 768 (10th Cir. 2008) (noting that "new evidence must affirmatively demonstrate [ ] [the petitioner's] innocence, not simply undermine the finding of guilt against him"; *McMurry v. Wolfenbarger*, No. 06–12415, 2007 WL 2318748, at *5 (E.D. Mich. Aug. 9, 2007) (holding that "attacks on a witness's credibility rarely provide proof of actual innocence"). Thus, Petitioner's Ground One claim attacking witness credibility do not equate to actual innocence and is procedurally defaulted since it was not raised on appeal.

2. **Grounds Two, Three, and Four**

Moreover, in Grounds Two, Three, and Four, Morris raises claims regarding the sufficiency of evidence already presented to the jury. (ECF No. 1, PageID #: 9, 11, 13). However, to establish actual innocence, Morris must show that he is factually innocent; mere legal insufficiency of the evidence is not enough. *Mainegra-Reyes v. United States*, 2013 U.S. Dist. LEXIS 31430, *16. Here, not only does Morris fail to address his procedural default,

his claim of actual innocence is not a claim of factual innocence, but rather, an attack on the sufficiency of the evidence.

Morris asserts that the state violated his Fourteenth Amendment due process rights by "entering a conviction for count five, possessing drug abuse instruments, on insufficient evidence and by failing to grant defendant's Rule 29 motion dismissing the charge" and "entering a conviction for counts six and seven, possession of drugs and trafficking drugs, on insufficient evidence …" (ECF No. 9 at PageID #: 1252, 1269). Additionally, Morris contends that the evidence presented regarding his possession of a controlled substance was also insufficient. (ECF No. 9 at PageID #: 1255).

However, Morris does not present an actual innocence argument and has failed to offer this Court *new reliable evidence* of innocence that was not presented at trial which would excuse his default. *See Schlup*, 513 U.S. at 324 (emphasis added). Morris' failure to offer any new evidence to attempt to establish his actual innocence is fatal to his claim. Therefore, because Morris has not supported his presumed allegation of actual innocence with new reliable evidence, and he has not demonstrated "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence," *Schlup*, 513 U.S. at 327, he has not met the standard for establishing an innocence claim to excuse his procedural default. Thus, Petitioner's ground two, three, and four claims attacking witness credibility and sufficiency of the evidence do not equate to actual innocence and are procedurally defaulted since they were not raised on direct appeal.

### D. New Grounds Raised in Traverse

Respondent contends that Morris filed new and expanded grounds in his traverse and these new grounds are not properly presented to the Court. (ECF No. 10, PageID #: 1295). As noted by

16

Respondent, "[a] traverse or reply to an answer to a petition for writ of habeas corpus is not the proper pleading for a habeas petitioner to raise additional grounds for relief. A court cannot consider new issues raised in a traverse or reply to the State's answer." *Burns v. Lafler*, 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004) (Gadola, J.) (citations omitted) (citing *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994); *Lewis v. Witek*, 927 F. Supp. 1288, 1291 n.2 (C.D. Cal. 1996)). Moreover, alleged violations of federal constitutional rights which are first presented in a traverse, rather than in a petitioner's federal habeas corpus petition, are not properly before the Court, and the Court need not consider them. *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005); *Jenkins v. Welch*, No. 4:09CV637, 2010 U.S. Dist. LEXIS 47239, 2010 WL 1948297, at *15 (N. D. Ohio Apr.26, 2010); *Sowell v. Collins*, 557 F.Supp.2d 843, 889 (S. D. Ohio 2008). However, this Court need not determine if Petitioner raised new grounds in his traverse. As noted above, Petitioner's four claims raised in his original petition fail due to procedural default and any new grounds raised in his traverse are not properly before this Court.

## VII. Certificate of Appealability

### A. Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c) ("A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right."). The "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The granting of a certificate of appealability does not require

17

a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

### B. Analysis

Morris's entire petition is procedurally defaulted. If the Court accepts the foregoing recommendation, then Morris has not made a substantial showing of a denial of a constitutional right. He would then not be entitled to a certificate of appealability. Thus, I recommend that the Court not issue a certificate of appealability.

## VIII. Recommendation

Morris has presented only procedurally defaulted claims, and he should not be allowed to amend his petition to add new claims as doing so would be futile. Thus, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

DATED: January 8, 2026

_____
Carmen E. Henderson
United States Magistrate Judge

_____

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within 14 days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).